to our next case, Papp v. Fore Kast Sales and Boeing. Papp v. Fore Kast Sales and Boeing. Mr. Gaynor. Thank you, Your Honor. May it please the Court, my name is Martin Gaynor, and I represent the Boeing Company. And with the Court's permission, I would like to reserve three minutes for rebuttal. Go ahead. Thank you, Your Honor. The underlying decision of the District Court to remand this case must be reversed, because the District Court applied an improper legal standard. Specifically, the District Court held that in order to obtain removal, Boeing was required to demonstrate that it was directly prohibited by the government from warning of a specific hazard. Right. I think we're on top of the briefing. Let me ask you a question about the way we should approach the case. Different courts seem to have different circuit courts, and of course this is relatively new, the amendment to the officer removal statute, so there's not a lot of circuit court present, but there seems to be a little bit of divergence with the Ninth Circuit taking the approach of saying we're going to treat this like a 12B1 motion and try to assess whether there's a factual or facial challenge, and then do some burden shifting, etc. And a more general approach by maybe the Second Circuit's case could be viewed this way as looking at it as a 12B6 pleading kind of a standard. So my question to you is, do you have an idea about how we should be even approaching this in the first instance? Is there an analytical framework, 12B1 or 12B6 or some other one, that we should be adopting as we try to analyze whether or not Boeing has made the jurisdiction or met the jurisdictional prerequisite to remove the case? Yes, Your Honor, I do. I think it's instructive, first of all, to get our bearings, to reference this Court's decision in Defender Association. And that just came out last year, that's a very recent case. And in Defender Association, this Court cited for the standard to apply for federal officer removal, it cited the Ruppel case in the Seventh Circuit, which is one of the three cases that address the very issue we're addressing here. So I think that's the starting point, because the standard identified in Ruppel and adopted by this Court faithfully tracks the amended version of the statute. Some of the other cases are actually still applying a three-pronged test that was based on the pre-2011 version of the statute. And I will get to your question. Because it's difficult, because the insertion of those three words really did make a fundamental change in this causal nexus requirement. But to address Judge Jordan's question here about is it more like a 12b-6, is it more like a 12b-1, as an initial matter, this case is probably not the case to get into, whether you look at it sort of as a pleading sort of standard or more like a summary judgment kind of standard, which is what the Court in the Ninth Circuit in Leite did. And the reason for that is because in Leite, the Ninth Circuit drew a distinction between whether there was a facial challenge to the notice of removal or whether there was a factual challenge. In this case, there was only a facial challenge, meaning the plaintiff did not oppose the facts that were alleged in the notice of removal or in any of the materials that were submitted in connection with the opposition to the motion to remand. So is the answer to the question, in this case it doesn't matter, so don't get into it? The answer, a little more precisely, is in this case it should be treated like pleading. If the notice of removal and the other materials submitted have allegations that would support removal, then the Court, and this is again a proposition that's reflected in Defender Association, is to construe those facts in the light most favorable to the party seeking removal here at Baldwin. So they're basically accepted as true, much like you would do on a 12b-6 type of motion. Would that be the same as a 12b-1 facial challenge? Correct. Yes. So what you're saying is leave that for another day? I think that's right, Your Honor, because there's sort of a facial appeal to what the Ninth Circuit did in Leite, and they said, hey, this looks a lot like a 12b-1 situation, we'll treat it exactly the same. The issue is when you go and look at the Supreme Court cases, they don't really create any basis for sort of, you know, taking that next analytical leap and saying if there is a factual sort of challenge where the party seeking remand comes in with its own factual affidavits and creates challenges of fact, there's nothing in the Supreme Court precedent that suggests that the District Court should get into some kind of elaborate fact-finding to try to decide whether removal's appropriate. Because what the Supreme Court repeatedly says is there's a strong policy in favor of having federal defenses heard in federal courts when there's a federal officer or someone acting under a federal officer involved. Hasn't the other side here actually said, hey, all that stuff Bowling's telling you, don't believe it? Sure, but they do. Aren't they trying to make a factual issue here? They're just arguing, they're saying just look at it facially and don't believe it. They're not coming in with their own affidavits, their own facts, saying believe our guy, not their guy. If you look in the record appendix, one, you'll find the notes for removal, which in and of itself would be sufficient to obtain removal in this case. Because the allegations support the removal, and again, because there's only a facial challenge, those are to be accepted and laid most favorable to Bowling. But, John, that's taking account of the PAP affidavit and the 36? Yes, because the PAP affidavit was really just a lawyer affidavit that authenticated, basically submitted various district court decisions. The only document that was attached to that lawyer authenticating affidavit was a page from the Boeing website that describes the C-47 military aircraft and its history, which, if anything, would support removal. Because when you read that, you look at it and say, this is the quintessential example of a private contractor acting under a federal office. If you look at, again, Defender Association, because there's a very thorough, well-thought-out analysis in there. When the Third Circuit went through the acting under prong of the analysis, they put heavy weight on the Supreme Court's decision, Watson v. Philip Morris. And in Watson v. Philip Morris, the example that the Supreme Court gives for acting under is when a private contractor provides manufacturers products pursuant to government contracts that the government's going to use in war. Let me ask you a different approach question. Since the district court in its decision-making didn't have the benefit of Defender's Association, if we agree with you that the acting under analysis raises some concerns in view of Defender's Association, should we go ahead and be addressing that or remand for the district court to apply Defender's Association in the first instance? And please address as well, beyond acting under, what do we do with the other issues the district court didn't have occasion to reach, color of defense, timeliness? Okay. With respect to the first question, I think this court can simply remand with instructions to deny, I'm sorry, reverse, and remand with instructions that the motion to remand should be denied. Because there's more than sufficient papers in the record appendix, including the notice of removal. Mr. Fogg's affidavit, which is the first sort of submission in the sealed appendix, that make it clear that removal is appropriate. So that's the answer to the first question. The answer to the second question as far as the other prongs that the district court did not, the district court said it didn't address those. In effect, what the district court really did was it kind of combined the acting under and the four or related two prongs. Even though it said it didn't, that's effectively what it did, because it was basing its analysis on these various district court opinions that it cites that were looking at the pre-2011 version of the statute and standards, the three prong standards articulated under that, which had both of those as one prong. So even though Judge Seddy was doing it separately, he really kind of put them together. So the answer to your question is, he said he would grant the remand because he would come to the same conclusion on the causal link. But he was going to do that, he says in his footnote, based on this same improper standard, which is this standard that we call the direct prohibition standard, that in order to obtain removal in a failure to warn case, the district court held that the party seeking removal must show that the government directly prohibited the requested warnings. But that standard is inconsistent with the language of 1442A. It's inconsistent with the principles in Defender Association, and it has been explicitly rejected by all three circuit courts of appeals that have addressed that issue, which is the... Well, let's talk for just a moment, before we get into the three circuit courts of appeals, is the colorable federal defense piece of this. That's one of those things that the district court get into that at all? No. Should the district court have the first shot at that? Again, I think if this court simply looks at the notice of removal and looks at the fog affidavit, it's clear that there was enough submitted. So it's not necessary. So there's enough on this record that we would not be stepping out of our lane to do it in the first instance? Correct. Because what? What is it about the fog affidavit which is so clear that makes it obvious? Because what you're really saying is if you sent it back for the district court to look at this and the district court decided there wasn't a colorable defense, that would have to be reversible error, right? Yes, correct. So what is it that's so clear about it that would lead us to that conclusion? In the notice of removal and in the fog affidavit, in both of those places, there are allegations that, one, these C-47 aircraft were manufactured pursuant to contracts with the government. That was an important factor in the Watson versus Philip Morris analysis. Is there a contract that they're being manufactured pursuant to? Two, they're being manufactured pursuant to government military specifications that covered all markings, all warnings, et cetera, on that plane. Three, that the planes were, in fact, manufactured in conformity with those specifications and contracts and were accepted by the government. And then finally, there are allegations that at the time, during World War II when these were created, Boeing was not aware of the risks of asbestos exposure, whereas the government was, and, in fact, some of the government manuals make references to asbestos-related hazards. Those things make clear that the mechanical specifications required preapproval for change. Is there anything in the affidavit or any of its exhibits that suggests that warnings, warning labels required some sort of preapproval, that they couldn't have been undertaken by the contractors on the initiative? Yes, in the fog affidavit towards the end, in paragraphs 28, I think, through 34 or so, there are statements to the effect that the government and Boeing discussed warnings and that the government maintained control over all aspects of any markings that were on the plane or any components of the plane, and that Boeing had no authority to go outside of what was permitted without asking, whether they asked or not. There is no requirement. That's an issue that's come up in some of these cases where parties have argued, shouldn't the contractor be required to seek leave to give the warnings? And the courts have come down, the circuit courts have said, no, there is no such requirement because it's not, there's nothing that you can find in the removal statute that would require that, and there's nothing in the Supreme Court decisions applying the removal statute that would require that. Okay. Thank you very much, Mr. Gaynor. Mr. Blumstein. Thank you, Your Honor. Thank you, Your Honor. Jeffrey Blumstein representing the appellee's plaintiffs, the Papp family. As I listen to what's been argued by Boeing, it seems as though they want to do something which Boyle and the Supreme Court never intended, which is to somehow create a blanket immunity for contractors such as Douglas with regard to state failure of warrant cases, as long as it can be shown that a product was made for the government, pursuant to government design and manufacturing specifications. There's nothing in the statute or the 2011 amendment, which I included the legislative history of for the court, which says that at all. You have to come to grips with the circuit court precedent that's out there, specifically, Lydia, and the Ruppel case, which seem to say that if you make the showing of the sort that's made in the fog affidavit, that you are operating under the direction of the military. In fact, those cases seem to be pretty closely aligned, you know, Navy contracts instead of back then Army Air Corps contracts, but government military contracts, you're good, you're good to go. Why would this case, why should it be treated differently than the Seventh Circuit treated the contractor in Ruppel? Well, there's several factual differences Judge Sheridan recognized. One was that we're not talking about someone who was in the military as a member or working for a Navy or Air Force. There, I'm sorry. Why does that matter? Well, as he said, is that there's no evidence that the government made a discretionary decision, which is the important part, a discretionary decision that somehow Douglas would be prohibited from issuing warnings similar to the type the government was issuing to its own employees that with regard to asbestos-containing landing gear, where sandblasting and grinding is part of the required maintenance and service. Let me read you from the FOG affidavit, all right, because this is, and as I understand it, there's not some competing affidavit in front of the court. This is the information. This is paragraph 29. Douglas Aircraft Corporation had no power to place any markings or labels on Douglas Aircraft Corporation aircraft or aircraft components, including GFAE components, except as required by government specifications. Any markings or labels on GFAE components were provided by OEMs, original equipment manufacturers, or the government itself, subject to government specifications and approval. That is an assertion of fact. We were bound. We had no power to do it outside what the specs were, and it's apparently unrebutted. Why isn't that all by itself game over for you? Because you are stepping back a moment, and again, why the defense here, the immunity defense, is not automatic for purposes of removal just because it's a military aircraft. It's clear from all of these cases that when you do removal, you have to support it if it's challenged by way of competent evidence. Competent evidence is not hearsay. It's not conclusionary, and that is something that Judge Sheridan was looking at when he analyzed the Fogg affidavit, and he meticulously went through the thousand pages of documents that were thrown into Mr. Fogg's certification. Let me go to the actual defense, but when we're dealing with the removal statute, isn't it crystal clear after Defender's Association that the district court's basis here for remanding, that is an apparent belief that there needed to be either a prohibition or specific mandate, some direction by the government, that that's not what's required? That was explicitly rejected in Defender's Association, which you don't address in your brief. Well, Your Honor, I believe that that case is not really apropos to the unique circumstances of asbestos cases. We are dealing with a totally separate body of law. The product involved here is one involving asbestos, and asbestos has been recognized, particularly in New Jersey, as extremely dangerous per se, and that because of that, there is strict liability if there's a failure to warn. You're getting to the merits, and I think that's the point, right? You seem to be making arguments against removal, which are merits-based arguments, and the point I understand your opposing counsel will be making, and which we're trying to get you to meet, is that's an argument to be made on the merits, and that the federal removal statute was specifically amended so that that kind of argument would be heard in a federal court as opposed to being heard in a state court. That assertion, the government made me do it, is a merits-based defense, which they're entitled to have a federal court here instead of a state court here. You've got to grapple with that. I believe that that's part and parcel of the basis for removal. Under Boyle, which is where we started all this, the Supreme Court said that it must be shown that, quote, that was in a design and manufactured case, but it's been applied to failure to warn cases, and what that means when it says someone has to show something, the person that has to show it is the person asserting the jurisdiction. Doesn't the Supreme Court also say you don't have to win your case to get removal? It sounds like you're saying they have to win. So they could win this case in order to get it removed, and I thought that was exactly what the Supreme Court was saying the opposite of. You don't have to show you're going to win. You've just got to show up with a colorable, a non-frivolous, kind of a straight-faced defense on the federal law to get you removed with the federal officer removal statute. And they've put in an affidavit saying, in effect, that government made us do it. We couldn't do anything other than what the government told us to do with these C-47s. So I'm still trying to understand how your argument is not a merits-based argument as opposed to a jurisdictional officer removal argument. It's not merits-based because what we're saying is that, and I think in one of your cases it talks about the issue initially raised, how do you deal with this when someone is saying there should be removal based on this federal contract of defense? You treat it, I would submit, on an analytical basis as you do someone moving for summary judgment. They have to show that, at least to move, that by competent evidence that there are issues, there are things that would support this defense. And here it would be based on the FITE case, which I don't think changed because of the 2011 amendment to the removal statute. You have to show things. All the language you quoted from FITE was just our court quoting what the district court said. There was not language where we were holding things in FITE. This was more of the same with these district court opinions that were pre-amendment, right? Well, it was, and that's where we got into whether it was pure dicta or not. But what's important, I think, is that if you look at, step back, Judge Greenberg for his court was looking at the Supreme Court cases and saying in order to effectively assert jurisdiction for failure to warn under the government contractor, you have four separate and conjunctive elements that have to be proven. But the burden is on you to show. Now, it's not on you to show there are no genuine issues of material fact, but at least to show that there is something. And the something would be that either, as other courts have said, the government prohibited it, the government issued detailed instructions on the issue, which precluded, or the government directed you not to issue the warning. There's nothing here on that. You suggested earlier, if I understood you correctly, that the Defenders Association case was not relevant here because it deals with asbestos. But Defenders Association changed the four-pronged task to fight to make it easier to remove, for those who were acting within the context of the relationship with the federal government, and explicitly disagreed with the argument that the contractor was, quote, it was sufficient for acting under purposes that the allegations were going to something that related to the relationship, the interaction between the contractor and the government. Why isn't that directly applicable here? And the district court used what, per Defenders Association, would seem to be superseded to the extent it required some prohibition or express mandate. Again, I apologize for not addressing that case in our papers, but I've dealt with asbestos cases for a number of years. I know what New Jersey law is and the basis for it, and I've also looked at the cases involving, even the cases from other circuits, involving asbestos. And in all of them, what there is is competent evidence. It may not be ultimately persuasive to a jury, but there is competent evidence, in some cases from admirals who were involved in the process, to at least say, here's competent evidence that there was a discretionary decision by the government agency. So you might win. You might win the case. I think we're going around in a little bit of a circle here. Here's what Defenders Association says. Unlike the general removal statute, the federal officer removal statute is to be broadly construed in favor of a federal forum. Now that doesn't say except in asbestos cases. That's a general statement about the character of the statute itself. That that federal officer removal statute is to be broadly construed in favor of allowing people in the federal court if they've got a colorable federal defense. Are you saying that they've got no colorable federal defense at all? Because if that's what you're saying, that was something you needed to come into court, in front of the district court and demonstrate, isn't it? In the face of the fog affidavit? I don't view the colorable defense separate requirement as being standing on its own totally. I view it as I believe Judge Sheridan did, that you have to, first of all, you have to show some competent evidence. And you're entitled to all reasonable evidence. All reasonable evidence is from competent evidence. There has to be evidence that your claim, that our claim was based on someone acting under a federal officer. And also that what that officer directed or stated or did by regulations or prohibition was closely connected to the harm and the claim involved. Then you have, I believe, that goes into a colorable defense. I don't think that it was meant that the colorable defense alone controls and that just by saying it's a military aircraft, we had a contract, that's enough. You have to come up with some competent evidence. Are you saying that Mr. Fogg is not competent? He talks about his decades of experience, beginning back when Douglas was Douglas Aircraft Company. He talks about his experience working on this aircraft. He talks about his understanding of the history of this aircraft, which he knows something about personally and which he's studied the business records of. We're talking about a World War II airplane. The people who actually designed it, worked on it, made those decisions, bless their greatest generation heart, they're gone. We are left for evidence to look to somebody by Mr. Fogg. But what's wrong with his affidavit that doesn't give him the competence to say, I've looked at all the records, I've been at the company for more than three decades, I can tell you this was the way the thing happened. It was built under military spec and we were not free to change it. How's that not competent? Because that is just conclusionary. I would point out one thing. Judge Sheridan, specifically one thing he did was, if you look at paragraph 29 of the Fogg affidavit, the only thing that he refers to is a technical, Exhibit 36, which is a technical manual. What Judge Sheridan did was to look at that and say, that's got nothing to do with a prohibition against putting some type of substantive warning of the same dangers that we know applies to anyone who works on this aircraft. And the point is, if you look at exactly what the document that's being referred to, which is RA-495, it does not in any way support what Mr. Fogg has said as to the government saying, we're controlling the contents of those warnings. What it says, first of all, it gives a direction to the contractor at 4C to display warning and safety precautions that would prevent injury to persons as well as aircraft. Then it goes on to say, service instructions for hydraulic lifts landing gear are something, are part of what we're talking about. And all it does is say, to give those warnings, it shall be on a metal plate attached near the point of service. And it says, we're controlling that the warning has to be certain colors, certain letters and height. There's nothing that says that we're prohibiting you from giving a simple warning saying, hey, asbestos, when you use, when you're grinding this asbestos-containing part, use respiratory equipment. Be careful. Danger. Okay. Mr. Rubenstein. Thanks very much, Mr. Rubenstein. Do you have something else? Sorry, one question, Mr. Rubenstein. If we reach it, could you briefly address your argument on timeliness? How is it when the amended complaint on its face doesn't specify that we're talking about a military aircraft or military contract that we should be counting the time that's running from the filing of that rather than the disclosure that it's a military plane in the deposition? Yes, Your Honor. It's interesting that actually that argument is one that is supported by the argument being made by Boeing's counsel, which is that just the fact that the complaint talks about landing gear, damage from injury from working on landing gear on a military aircraft, and that the military aircraft is supposed to be, is alleged to be manufactured by Boeing or Douglas, that alone, according to counsel, should give rise to a culpable defense of immunity. And so, therefore, when they get it, they should know military aircraft disclaimer by the plaintiff that we're not talking about it. We're talking about only the failure to warn claim from military aircraft. You're talking about a jurisdictional disclaimer? That's a formal disclaimer. They say that you in your complaint just said we got asbestos from working on your planes, that it wasn't until the deposition that it was clear you were talking about a military plane. And then when they said, ah, military plane, we got a defense. That's when they made their move. So what's wrong with that logic? There's now because, as Judge Sheridan found, and I think Judge Greenberg recognized in Fight, when there's that type of disclaimer, it says that, hey, this is a military aircraft. From the disclaimer, it was clear that you were talking about a military aircraft? Yes. It says with regard to military aircraft, we're only talking about failure to warn. We're not going to talk about design or manufacturing defects. That's what Judge Greenberg specifically referred to in Fight. It's what Judge Sheridan referred to. And according to counsel, apparently once you say that, that should be enough. What's the precise wording of this jurisdictional disclaimer? Does it say anything about military at all? Yes. Well, this is in the record, right? I wish I could find it, Your Honor. All right. It's in the amended complaint, and it definitely does talk about – if I might just have a moment. I will find it. I know I cited it specifically. A651? My belief. A651 page of the record. This is the appendix of A651? Unfortunately, I did not bring the entire appendix with me. All right. Well, we'll look it up. If we've got it, we'll look it up, and we'll hear from – talk about military aircraft. And I don't see how, based upon – this is my point, Your Honor. Based upon the certification from Mr. Fogg, it's clear that he does not differentiate between any type of military aircraft that Douglas made. He says that for all of them, it was a discretionary decision made by the government that we cannot give warnings. All right. We've got your position. Thank you, Your Honor. Thank you. We'll hear from Mr. Gaynor on rebuttal. Just very briefly, Your Honor, for your convenience, that disclaimer is located at page 80 of the appendix, and it's a form disclaimer, as Judge Krause said, and it talks in terms of to what extent that any plaintiff's asbestos exposure took place on a federal enclave, etc. So it's just a form. There's no actual allegation in the complaint that says, we're talking about military aircraft here. There's no reference to the C-47 in that complaint, and is set out in our reply brief under the Third Circuit. There are a number of decisions that say it's got to be on the four corners, something that gives you notice that you have a right to removal. Mr. Gaynor, you suggested the district court conflated the acting under and for or relating to type prongs. Yes. But how would you formulate their different meaning? Because it seems that in your briefing you're also defining them the same way or making the same argument as to why they're both satisfied. They are related. The acting under, really the phrase that is used in the Supreme Court case, that calls for the triggering relationship between the government and the contractor. It's something that the standard is defined by this court and the Defender Association. You need to show that the contractor is assisting or helping to carry out some act of a federal superior. Then they go back to Watson. That's what I was looking for a second ago. They cite to the Supreme Court's decision there, a quintessential example of that is when a company is manufacturing equipment for a war because that's something they're assisting the government with doing that the government couldn't do without them. So that's what that prong goes to. The nexus prong, I think the best place for your Honor to look is if you go to the county, Jefferson County versus Acker case, which is the Supreme Court case. It's also referenced in Defender Association. Your Honor, there the Supreme Court, when they talk about the causal nexus, they point right to the word for in the statute. In fact, that's what most of that case is about. They italicize the word for both the majority opinion and the dissent. Essentially, when you read it, you'll see that's where this causal nexus came from before an act under color of office. In 2011, when Congress amended the statute, they did it explicitly to broaden the universe of acts that would invoke removal jurisdiction. The means they used were adding those words so that you wouldn't be limited by for. It's for or related to. That's why the two prongs are somewhat different. In the first, it's just were you acting under a federal office or overall? Then two, were the acts that are complained of, are they for or related to that federal office? Here, clearly they are because whether you're going to affix another warning to this plane during World War II, when the government is giving you detailed specifications as to the markings that would be on that plane, it's clearly connected with that federal office. Thank you. Thanks very much. Appreciate the arguments this morning. We'll take the matter under advisement.